The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning. We're on the record in case number 4-23-0757, Snowstar Corp. v. A&A Air Conditioning & Refrigeration. Counsel, if you could identify yourselves for the record, first for the appellant. Good morning, Your Honor. Stacy Shelley on behalf of A&A Air Conditioning & Refrigeration Service. Thank you. And for the appellate? Matt Preston on behalf of Appellate Snowstar. Okay, thank you. Ms. Shelley, you may proceed with your argument. Thank you, Your Honor. Good morning. May it please the Court, Justice Leonard Harrison-Steigman. I represent, as I just noticed, or I just advise, the appellant in this matter, A&A Air Conditioning & Refrigeration Service. And we are here this morning to ask that this Court grant us a new trial. A&A acknowledges that it was not entitled to a perfect trial or a trial completely free from errors. However, A&A was entitled to a fair trial. And a reasonable person cannot look at the evidentiary rulings here and find that the decisions by the trial court, both on individual evidentiary issues and cumulatively, were fair. Or that they did not have the appearance of affecting the outcome of the trial, which is what A&A needs to demonstrate and this Court needs to find in order to determine that we are entitled to a new trial. The errors raised by A&A in their appeal, the arbitrary and capricious nature of the trial court's rulings, that is, their very unreasonableness, is crystallized in the trial court's 21-page order denying A&A's post-trial motion in its entirety. A reasonable person, I think a reasonable judge, would find that decision extraordinary for the positions it takes against A&A and the language it uses to do so. A&A is not arguing here today that the verdict was against the manifest weight of the evidence, as we noted in our appellate briefs. Our appeal is not premised on the basis that no reasonable jury could ever find as they did based on the evidence before them. But the jury's verdict is only as valid as the evidence it had to consider. And the trial judge is the gatekeeper of the evidence, has the discretion to decide what's relevant, what is not, and what evidence is unfairly prejudicial or misleading or confusing to the jury. If the trial judge abuses his discretion when he makes those decisions on those evidentiary issues, that is to say, no reasonable judge would rule as he did, which we assert happened in this case, where all of the close issues and, frankly, a couple of the not-so-close issues were decided against A&A on material issues that directly impacted damages, particularly the largest portion of plaintiff's damages claim, which was the business loss and liability. Then those erroneous decisions constitute reversible error, and A&A is entitled to a new trial. I would like to specifically focus my time today on what we consider to be kind of the two most glaring errors, either of which individually is an appropriate basis to grant a new trial. One, the first is Kerry Smith, the decision by the trial court to first sustain plaintiff's objection to his opinion regarding the value of the business loss and then to summarily dismiss Mr. Smith on the basis stated, well, the basis stated at trial was that there was improper ex parte contact by A&A in providing him his materials. That argument was abandoned when it got to the post-trial motion by both the plaintiff and the trial court, at which point there was an argument that it was a violation of the Rule 218 case management order that had been previously entered. And then the other issue I'd like to primarily focus on is the cross-examination of defendants or A&A's liability expert, Gary Hong, in the last morning of the trial about a testimony of Anthony Fairchild, the witness, that was not called a trial. You are also raising an appeal, are you not? The trial court's denial of a bunch of many of your motions eliminate? We are, Your Honor. Yes, we are. Do you preserve those issues where the trial court ruled against the admissibility of evidence, making an offer of proof regarding what those witnesses would say? Specifically with respect to a particular witness, because I believe that we did, Your Honor, but part of the problem with the wholesale denial of the… There are offers of proof divided into formal offers of proof and informal offers of proof, and an informal offer of proof is when the trial court essentially would say, counsel, I understand what this witness is going to say, and the other side isn't disputing that. So you don't need to make a formal offer of proof, which is when you literally put the witness on the stand and ask questions, because the record is clear enough, and you seem to be arguing by, unless I misunderstand, that formal offers of proof weren't necessary here because the trial court had enough before and understood what was present here. But the problem is, as this court has written, whether what is present is adequate to constitute an offer of proof, an informal offer of proof, is left to the trial judge's sound discretion. And what counsel is supposed to do is, again, this court has written, is ask the court, Judge, do you need… We want to present the testimony of this witness. Do you need to hear a formal offer of proof, or is the court satisfied that you understand what this witness is going to be testifying to? So an informal offer of proof by representations, if any further are needed, will be adequate. Did any of that ever happen? Those particular words, well, so there was… Those particular words, that's, you know, I'm a former trial judge counsel, and by gosh, particular words, especially on technical matters like this, really matter. Well, Your Honor, I think, my guess is you're specifically referring to what happened with Kerry Smith. Well, you had… Didn't you have like a dozen of these through which you objected? And did you ever make any offers of proof regarding any of the objections that were sustained by the trial court? Or even ask the court, Judge, do you need a formal offer of proof by us so that you will understand what the issue is here? Well, Your Honor, I don't think there's any question that the trial judge did not understand these issues. Well, specifically with respect to Kevin Hexdell and the refusal to allow him to offer an opinion, we absolutely made a formal offer of proof after the trial judge denied it. With respect to Mr. Smith, the evening before he was set to testify, there was a 30-minute argument on the record between the parties about the plaintiff moved to keep him. There was a 30-minute argument about it. The morning the trial judge ruled that he could testify, he ruled that he could testify about his one-page report. I think he said something to the effect of, you know, ANA, you have 10 minutes. Snowstar, you have 10 minutes on cross. The next morning after ANA called Mr. Smith to the stand, Snowstar re-raised its objection. The trial court began to allow ANA to perform its direct examination on Mr. Smith when he got to the point where we were handing up the exhibit for admission. Snowstar then asked to voir dire the witness. So, at which point the jury was removed, the witness was voir dired, and then the trial court refused to allow admission of the exhibit on the grounds that it was unfairly prejudicial. He did not go through a Rule 403 analysis, which he is required to do. I think in order to, you know, if the position is the balancing test we find is unfairly prejudicial, I think that there is an obligation to go through the balancing test to reach that conclusion. That did not occur. That in and of itself is an error of law and abuse of discretion. Counsel, is it your position that an offer of proof regarding the trial court's exclusion of Smith's testimony was not required because it was apparent the court clearly understood the nature and character of the evidence? Our position is that a formal offer of proof was not required. I think in addition... I understand that, but here's the problem. Who determines that? And why shouldn't, for all we know, maybe the trial court had some questions or some uncertainties in the court's mind. And since the trial court is always the person... The trial court always has the option, if there's any uncertainty, of saying, Counsel, put your witness on the stand and let's... I'm not comfortable with the representations. I want to hear what the witness has to say. But you didn't give the trial court that opportunity in this case, so we have to guess that you're correct, that the record was good enough because the trial court supposedly understood what this was all about. Why should we be required to make that guess? I don't think you're required to make the guess. I think the record reflects that the trial court understood what the issue was. In addition, Your Honor, what the case law says is you don't have to make a formal offer of proof if you're unable to do that. In this case, after the trial court refused to allow Mr. Smith to offer his opinion in Exhibit 54, then the plaintiff's counsel raised the issue of this improper ex parte contact, which is an issue they completely abandoned in the post-trial motion and on appeal, which the trial court did not base its post-trial ruling on, and said, Your Honor, we think this witness was improperly brought here today, and he should be immediately dismissed. And the trial court said, and I quote, yes, that's right, and then instructed him to leave. Sounds like a harsh ruling, which is all the more reason that you ought to say, and we want to make a record, what he'd say if the trial court didn't improperly buy this testimony. Isn't that right? I don't think so, and I think it didn't, this didn't happen in a vacuum, Your Honor. And not only that, you know, the cases say waiver forfeiture is a limitation on the parties. It's not a limitation on this court. And even if this court was inclined to find that there was a waiver on that offer of proof, that's not the only issue that we raised that would entitle us to a new trial. Well, counsel, I've taken enough of your time, and I will let you continue on. My colleagues may have questions as well. If I may, though, to somewhat follow up with some of those comments, I mean, you argue in the brief that the trial court improperly denied the motions in Lone as untimely. But even if you're correct, you agree that in order to preserve those issues, you would have to timely object at trial and address the issue in a post trial motion. Correct. So, I would say as a general rule, yes. And we did do that in this trial, but I am unaware of the situation that happened in this case. The judge collectively looked at basically the eight motions that were directed at the specific evidentiary issues, in particular, damages issues, which were probably the most hotly contested issue in this case, particularly the amount of the business loss. And said, these are all untimely, so I'm basically not going to consider them. So, we did re-raise them during the trial, but basically at that point, the trial court kind of took the position that you didn't raise this in a dispositive motion. If you were going to raise these issues, you should have raised them dispositively, and now I'm not going to do anything to prevent the plaintiff from getting this evidence in, whether or not it had appropriate foundation or not. Once he made that decision, and he was very clear, he was very clear pre-trial, and then he was incredibly clear as well in the post trial motion, that that was the basis for barring those issues. So, we did re-raise them again, but I think the idea, the reason, my understanding is, why you are required to re-raise the issues at trial is to give the judge an opportunity to reconsider an earlier decision, or sometimes the judge will say, well, we're going to reserve that, we'll deal with it at trial. So, let's focus on a specific example with Dr. Rexroth, for example. In Motion and Limit 43, that sought to exclude his testimony about the value of the lodge and damages, and in that particular motion, the argument was that it was a failure to provide a proper disclosure. However, at trial, that wasn't the basis of the objection. It then changed to lack of foundation, and it does not appear that there was any discussion or objection on that same basis. And I will apologize. I think that Mr. Bowman went first. And I think that was in 42. Yeah, and so the, but it was the same issue, and so kind of the same basis for the objection. What the trial court said was that he didn't need, that it wasn't a matter of disclosure, that they were light witnesses and they could simply offer those opinions. And the trial court, in the post-trial order, said that it understood the foundation objection to be part and parcel of a failure to disclose. Then said, but I was wrong, and so therefore we did not make the correct objection. I don't think it's, even if the, even if we were required to make the objection with respect to a failure to disclose 213 F1 testimony, that does not change, and you found that that was waived because we didn't make that specific objection in the trial court. It does not do anything to diminish the foundation objection that was made and is entirely appropriate to say, I mean, the proponent of the evidence has the obligation to demonstrate they have appropriate foundation to offer that. They made no attempt to do that. So even if they didn't need to disclose it, there's, I haven't seen anything that says they don't have to lay the proper foundation for it. And that opinion was, or that objection was overruled on the basis that they didn't have to do that. That was not considered, the plaintiff did not attempt to lay that foundation. They just simply said, he's an owner that's good enough. So I think we preserved an error, even if it wasn't the, even if this court determined that we did not preserve the 213 F1 error, we made an objection as to foundation, and they didn't demonstrate the foundation for that opinion. With regards to Bowman, then, as you've mentioned, I mean, categories were provided that talked about that disclosure. Why wouldn't that have been sufficient? And you did depose him. So why couldn't you have asked about the valuations at that time? Wasn't that opportunity there? The case that we cited, the Kim versus Mercedes-Benz, so if you're going to give a lay opinion, you still have to demonstrate kind of the, I think you have to say more. And I think the appellate cases that we cited agree that you have to say more than simply, we're going to talk about the case. Even that that is insufficient. So when they say damages, that is basically what we're going to talk about our case. We're going to talk about the damages. Ms. Gelley, were you at the deposition? I was not, Your Honor. Okay. Were questions asked regarding damages at the deposition? I believe they were. Okay. Why wasn't it then a full and fair opportunity to flesh out the issue of damages then and there? I don't think we're required to try to intuit every possible thing that might get asked. That's why we have disclosures. I think if they disclosed something, we're going to talk about the fair market value of our loss. I think that probably might have been sufficient to get it in. They did not ever disclose anything like that. They identified in answers to interrogatories that Bowman would testify to Snowstar's property damage. Is that right? I believe so, Your Honor. I don't have that disclosure right in front of me, but that's probably accurate. And damages in support of the allegations in the complaint. I'm just wondering, you're saying that that's not enough of a tip-off that Bowman's going to be talking about what he talked about at trial. Is that what you're saying? I am, Your Honor. Not necessarily with respect to the fair market value of the property that they needed to jump higher than they did to demonstrate that either of the owners had a basis to offer opinions as to the fair market value of the real property loss. Counsel, I have a quick question before your time comes out. And that's, you're arguing, if I understand correctly, the trial court erred when it admitted Engle's expert testimony on the issue of damages. But your side earlier said you had no objection to the admission of Engle's report. And do I understand, is your argument that that was a mere housekeeping matter that did not waive an objection to the foundation of the report's contents? Am I correct in that understanding? That is my position, Your Honor. Again, I've been a trial judge a long time before I got this wonderful job, and I don't understand this housekeeping business. I mean, documents received as evidence have consequence. Juries are going to consider it. What is this housekeeping exception? I think there's a difference, Your Honor, between saying we don't have an objection to the form of that report and the contents of it. I've never heard that objection, that difference before. How does that work? We understood that they would be using that report to examine, and we objected when they used the report to examine. It's not evidence before the trial, before the jury, until it's evidence before the trial. There's a reason that parties submit exhibit lists in advance. If we had to do over again, we would have registered more objections with respect to Mr. Engle's report. But I think part of that problem also goes back to the wholesale denial of the motions in limine, which absolutely dealt with the opinions in that report, which the trial court was very clear it was never going to prevent the plaintiff from putting into evidence. Okay, time's up. Thank you, Your Honor. Okay, Ms. Shelley, you'll have time in rebuttal. Mr. Preston, you may proceed with your argument. Well, may it please the court, counsel, thank you for the opportunity to address you. As we introduced earlier, my name is Matt Preston. I'm one of the attorneys representing Snowstar in this matter. And obviously, there's been sort of the focus of the discussion thus far has been based upon certain questions of the appellant. And I would begin by simply asking the panel, are there any issues specific to the appellee that you would like me to address? Yes, as a matter of fact, I would. There's this issue about witness Hextel being barred from testifying because apparently, your position the court accepted was, you can't do that without revealing that there's insurance involved in this case. Is that correct? That was one of the bases for our complaint about it. My question is, why is that somehow necessary? It seems to me, people could have all kinds of opinions about valuation without necessarily being insurance or justice campaign.  Did you offer or was there some discussion about, well, this is important testimony, and we should be permitted to testify and we will keep out any reference to his being an insurance adjuster and let the jury guess if they have to. How is it he knows all about this stuff, but it seems to me, some effort could have been made to address that, couldn't it? Yes, and I believe that it was. And so, in order to more fully answer that, it's necessary to address the full range of issues that we raised with the trial court, which the trial court accepted. And that was Mr. Hextel was going to be beyond simply offering photographs, which he was permitted to do. The ANA wished to have Mr. Hextel offer opinions regarding valuation issues. Clearly, unquestionably, would constitute an expert opinion for which a report and designation as one of the three control experts would have been necessary. Mr. Hextel was not one of the three control experts listed by ANA consistent with the case management order. And therefore, one of our bases, which we raised with the trial court was, this is improper. He is not disclosed as an expert witness. He's not one of the three. So he's the fourth witness that the trial court's order didn't permit? Correct. We made that argument to the trial court. The trial court's post-trial order suggests that's one of the reasons why Mr. Hextel was not permitted to testify. So that is perhaps... Excuse me, Mr. Preston, did the trial court state that as a basis at the time, during trial, or was it only during the hearing of the post-trial motion? I don't recall if the trial court said that on the record. It was clearly an argument on the record, and we cited in our brief, that was clearly a basis which we advanced to the trial court at the time. So that was something that the trial judge was considering within his decisions relative to Mr. Hextel. Did the parties in the trial court ever discuss the possibility of having Hextel's testimony admitted without reference to his being an insurance adjustment? There was discussion about that in terms of ANA saying he knows not to mention insurance. The problem was Mr. Hextel is not a fact witness in the sense of he did not provide an estimate. He has no expertise relative to valuing property. He made no efforts to value this property as an individual with the experience necessary to understand, for purposes that are relevant to the metric of damage in this case, what is that damage or what's the cost of repair. He is an individual who came in and took information and fed it into a program called Exactimate, which is inherently an insurance program, not designed to determine what are the damages... Wait a minute. Who knows it's inherently an insurance program? I'd like to think I have as much familiarity and experience as the average juror. I wouldn't know that. That actually is not curative. That's precisely the problem. Exactimate has a specific purpose, and that is to determine the actual cash value from an insurance standpoint. That is a much lower value than the repair cost. And therefore... Since you're arguing now about how he doesn't have the appropriate background or expertise, whatever, to be permitted to testify, that goes to whether they should be permitted to testify as an expert. There's nothing to do with insurance, does it? Again, insurance... What I really want to stress is insurance was simply one of the bases. The fundamental issue is that he was offering an opinion that would have violated the case management order. It was a backdoor effort for ANA to have more than three experts, and we argued that would be improper in the court, and the court accepted that as reflected in his post-trial order. Additionally... Just so I can clarify, the February 3rd, 2022 case management order is the one you're referencing. Is that accurate? And that was the final case management in that? Right. That listed there being three expert control witnesses per side. Thank you. Additionally, Mr. Hextel would have simply been irrelevant. The ANA had in its opening accepted a higher figure than Mr. Hextel's number relative to the cost of repair, and therefore Mr. Hextel was simply irrelevant in this issue. And finally, it's not just that he would have introduced insurance issues, but we would have had to attack the Xactimate program, and we would have had to explain to the jury that Xactimate is linked specifically to insurance concepts of cash values. We would have had to introduce the insurance policy. We would have had to have explained the entire workings of Xactimate so that an irrelevant witness who wasn't designated as a control expert could offer prejudicial and irrelevant testimony. The judge in his order articulated all of those reasons, as I've just described it, as part of his thinking. That is quintessentially within the discretion that the trial court had, and it is certainly not an abuse of discretion. Counsel, I would like you to also address, we discussed it previously, but the testimony as it relates to Carrie Smith. That has been discussed earlier. Initially, you claimed that A.A. forfeited that argument, but it does appear that the trial court significant argument was made before the court, that the court had the report. And so it does seem at least that there's an argument that it was apparent from the record what Smith intended to testify to, and in fact, there was a voir dire to address some of those issues. Can you expound on that issue for me? Yes, there are two elements with regard to the record necessary to sustain an appeal, and I'll start with the part of it, which is this court needs a sufficient record by which it can determine that there is something that would be relevant within the standard required for this evidentiary issue, and that is that there was a prejudicial effect of the exclusion of the testimony in a way that impacted the outcome of the trial. There is no record made. There is a number written down by appellate counsel, no citation to the record as to what that number means, what it relates to, what it encompassed, and therefore, there is insufficient record for a preservation purpose by which this court could establish was the exclusion of this prejudicial, what did it relate to, and what was the scope of it. So there's the aspect of failure to preserve that relative to this court's review. Then also there's an error preservation component that goes back to the at the time of trial aspect, and that is the mere fact that the judge had in his hand a piece of paper generated by a witness who had looked at something years earlier. This witness, Mr. Smith, did not at any time in my voir dire ever say what his opinions are currently. He did not even express whether he would stand by anything that was written on the piece of paper. For all we know, very logically, given that Mr. Smith had earlier said that he could not be involved in this matter, it is very logical that Mr. Smith's response would have been, I haven't had the opportunity to look at these materials for years. I cannot be involved in this. I'm not in a position to offer any opinions. The only reason we don't know that is because counsel failed to make an offer of proof, and any suggestion that they were thwarted in doing so is incorrect. When we emerged from the sidebar discussion, which was back behind the bench where we had gone for the sidebar, Mr. Smith had remained in the witness stand. He was literally sitting in the witness stand. Therefore, it was as simple as saying, Your Honor, I would like to make an offer of proof of Mr. Smith, which would have done two things. Number one, it would have informed the trial judge of what Mr. Smith's opinions actually were, and whether he was in a position to offer any opinions. Two, it would have created a record by which this court could assess the potential prejudice or impact on the trial. The failure of counsel to do so constitutes a waiver of that issue, pure and simple. Mr. Preston, could you just comment briefly on Smith's role, his status, I should say, at the time of trial vis-a-vis a retained expert by Snowstar? Because it sounds like the trial court, it sounds like it was argued that ANA could not contact Smith, even though Snowstar had no intention of calling Smith as a witness, that he was in some sort of protected status from being contacted by ANA. Could you comment on that? Sure. And that's really a derivative of the fact that ANA, I believe, is the party that has to be bound by the representations that it made to the judge. ANA made the representations to the judge in their efforts to call Mr. Smith to suggest that Mr. Smith remained an expert witness of Snowstar. So that was their first position that they took in order to seek relief from the judge. Having done so, they're now judicially stopped from taking a different position, and therefore our articulation was really within that concept that ANA chose to make the argument to the judge to say Mr. Smith is still attached to Snowstar, and therefore it's appropriate for us to call him as a witness. Now, the reality is, and as we had made clear to the judge, and this is in the C part of the record, C 1257, Mr. Smith had in fact informed us that he could not and would not continue to function as an expert witness, which gave rise, as soon as our firm was involved, gave rise to us appearing before the judge to indicate we need to reset deadlines, we need to be able to have different witnesses. That was what led to the case management order with each side having three expert witnesses, and we listed three expert witnesses, none of whom were Smith. So it was not Snowstar's position that Mr. Smith remained. However, that was the position that ANA chose to articulate and to seek judicial relief based upon that, and I think the trial judge held them to account for that to say that they can't have it both ways. Okay, go ahead. Thank you. Are there further questions? I don't necessarily want to talk about things that for which you don't have questions. And so I would, I would invite any other issues that you feel are important that we haven't covered. I would add one other thing with regard to Mr. Smith, and that is, since there has, since he has been a subject of a fair bit of discussion, and that is, in terms of the lack of potential prejudice, relevance, or impact on the outcome of the trial, ANA, once they had an opportunity to designate experts under the case management order, one of the three that they did have was a gentleman named Mr. Nitti. Mr. Nitti gave an opinion that the loss of revenue in this matter for Snowstar was less than $18,000. Mr. Nitti appeared at trial, testified extensively, including giving the jury that figure that Snowstar's damages were less than $18,000. And therefore, any notion that it was prejudicial against ANA to not be allowed to have Mr. Smith give the figure that was many, many multiples higher than that, they would be essentially having to call a witness just to impeach him with their own expert. And there can be no prejudice because their expert was permitted to give a figure far lower and far more beneficial to ANA. I have a question in regards to Bowman's testimony, wherein he gave a specific dollar figure relating to damages. Was a dollar figure ever provided during discovery as a disclosure? It was in so far as there are two forms, one being written records. We provided written records that were then admitted without objection in the form of Exhibits 5 through 7 in this matter. Those records were provided and therefore disclosed to the other side what the opinion was regarding the specific issue of repair costs. And I think it is vital to note that Exhibits 5 through 7, that's plaintiff's exhibits, came into evidence without objection and contained the very figures that Mr. Bowman and Mr. Rexroth then testified to. So the idea that somehow there was any sort of unfair prejudice or anything is belied by the fact that one, there was a thorough disclosure of the exact figures in the form of documentary evidence. And in addition to that, those figures were then presented to the jury without objection and therefore there can be no error, again, preserved regarding Mr. Bowman or Mr. Rexroth or their testimony as to those damages. Counselor, Justice Harris, does that answer your question? It does. Thank you. Can you address briefly Gary Hong's testimony and address the issue that's been raised by ANA that the trial court abused its discretion when it permitted you to cross-examine their expert regarding those hearsay statements from Anthony Fairchild? Yes, thank you. First of all, the scope of what were permitted to engage in cross-examination under Rule 611B encompasses those matters that may alter or even destroy, the word destroy is used in the rule, in terms of what the appropriate scope of impeachment is. In this case, Mr. Hong unequivocally testified on direct examination that Mr. Fairchild's deposition was among those that he used as Mr. Hong described as data points in reaching his opinions and that those data points from the opinions or from the depositions were just as important, Mr. Hong said, as the physical evidence. Therefore, Mr. Hong, the scope of what he looked at or didn't look at within depositions was clearly within the scope of fair impeachment. There were three questions that we asked regarding Mr. Hong that are the subject of the challenge here. And what's vital to note is that we did not ask questions of Mr. Hong about Mr. Fairchild's deposition directly, but rather what I asked Mr. Hong about was Mr. Hong's own notes regarding Mr. Fairchild. And so, Mr. Hong himself had selected as an expert, he had by virtue of writing down 13 notes while he reviewed Fairchild's deposition, Mr. Hong had articulated as an expert what he thought was significant enough to make note of. However, as to those notes that didn't support giving an opinion that would be beneficial to ANA, he entirely ignored the statements of Mr. Fairchild. The impeachment was limited to asking Mr. Hong not about Fairchild's deposition per se, but about Mr. Hong's notes regarding that deposition. That is quintessentially within the scope of fair impeachment. It is important to note that I asked those questions, solicited those answers, and moved on. I did not belabor the issue and did not, in closing argument, return to that in any effort to make reference to those statements as substantive evidence offered for the proof of the matter, but rather purely limited those to the scope of impeachment and went only so far as necessary to accomplish that impeachment. Some of the Illinois cases talk about, including the Yeager case, about the use of impeachment as a Trojan horse to get an impermissible testimony. This was the antithesis of that, as demonstrated most clearly by the fact that my questions were limited to asking Mr. Hong about his own notes. He had defined what the parameters were of what was important. Mr. Preston, does it matter? And maybe you could just help confirm my recollection. Hong testified that he had reviewed Fairchild's deposition? Yes, he did. He had been provided the deposition as part of his materials for review, is that right? That's correct. So as far as, in terms of Wilson v. Clark, those are materials upon which Hong partly based his opinions, correct? Absolutely. Why wouldn't the deposition itself? You went to some extent to explain that your cross-examination was limited to Hong's notes, but why wouldn't the deposition itself, Fairchild's deposition, be fair game? I believe that it would. And the reason why I went to some lengths to say that I was limited to the notes is I'm mindful of that sort of Trojan horse concept of not having an argument that we utilize cross-examination to introduce testimony of another witness, but rather had our questions for the very specific purpose of impeachment only. But I agree that Mr. Fairchild's deposition itself would have been fair game. My comments are simply to note that we went one step further in terms of the circumscribed nature of our impeachment purposes, which I think, which I would hope would be helpful to contradict the assertions made by A&A. Okay, thank you. Yes. Overall, what I would say is the verdict in this case is demonstrative that the jury issued a clear-eyed, deliberative decision. They were not swayed by either any evidence that was introduced or was kept out. They heard a thorough and robust presentation by both sides, weighed the evidence carefully, entered a verdict that was far less than what Snowstar had asked for, and then added 10% fault to Snowstar on top of that. This jury, there's no aspect of any evidentiary issue that's been raised by A&A that was going to change the outcome of this case, and there's been absolutely no demonstration on this record by A&A to meet the high burden of demonstrating that. For that reason, we would ask that you affirm the jury's decision, and thank you very much for your time. Okay, thank you, Mr. Preston. Ms. Shelley, rebuttal argument. Thank you, Your Honor. I would like to specifically talk a little bit about Gary Hong and scope of cross-examination and give a little bit more context about how the trial court or how it got there. There were pretrial motions to bar Anthony Fairchild from offering hearsay statements. At the time, the trial court said, I am inclined to grant those who will reserve them for trial. Plaintiff didn't call Anthony Fairchild. The last morning of trial, 15 minutes before Gary Hong is called, plaintiff's counsel says, I want to examine Gary Hong about his notes on Anthony Fairchild's testimony, which at this point is now three layers of hearsay. There's some argument about it. We object to the entire scope of the cross-examination with respect to Anthony Fairchild. Ms. Shelley, before you proceed, can you just tell me, on direct examination, was Mr. Hong asked if he had developed opinions based upon the materials that he was provided for review? He was, Your Honor. He was asked what he was reviewed. He reviewed the entirety of what he reviewed, which included 10 depositions, seven of whom were witnesses that were called and three of whom were witnesses that were not. If the trial court is going to allow, even cross-examination is subject to a Rule 403 balancing test, which is a danger of unfair prejudice, and that was not applied here, not considered. With respect to whether or not a new trial is appropriate, I think if you read the trial court's opinion, even he thinks it was an error to allow that cross-examination. He never says in the whole of that section when he's talking about the cross-examination of Hong, which comprises several pages of his lengthy opinion, he never says it wasn't error to allow it. Counsel, we're here in the appellate court now, and you acknowledge that these materials, Fairchild's deposition was provided to Hong for review, and that Hong testified that his opinions were based upon his review of the materials, Fairchild's deposition included. Doesn't the case law say that Hong then may be cross-examined regarding the bases for his opinion, which would include Fairchild's deposition? It's still subject to a Rule 403 balancing test, Your Honor, which is the danger of unfair prejudice, confusing the issues, misleading the jury. Counsel, what's the balancing test here? What's the issue? The witness says, yes, I considered this. I don't understand the problem with pursuing further aspects of this particular report that he said he considered, and how he did it. Well, it's triple hearsay from a witness, three layers of hearsay from a witness who was not called to testify at trial, and then the particular timing of when… Counsel, just a moment. When we're talking about materials that an expert witness says he relied upon in forming the opinion he's permitted to testify about, questions of hearsay don't matter. He did not say… Isn't that correct? So why are you even arguing it? Your Honor, he did not say that he relied upon Gary Fairchild's deposition. He said he… Well, just a moment. Is relied the factor? Isn't he considered it in forming his opinion sufficient? No, not necessarily. It still has to be subject to the balancing test. Well, what I don't understand, you say this balancing test balanced the fact he considered misinformation in forming his opinion against what? What's the problem here? Here's a testimony from someone who overheard an unidentified person say something. It still has to be considered whether it's relevant and probative. Well, if its foundation was so bad, why is your expert considering it at all? He reviewed… In forming his opinion. He… He didn't consider it with respect to the formation. He did not use it to form his opinion. It was one of the materials that he reviewed out of a whole lot of things. Go ahead. The last thing I'd like to address, Your Honors, is the issue of cumulative error. I think that… I'm afraid, Ms. Shelley, you're out of time. If you want to just sum up. That appears to be the case. I'd just like to say I appreciate you taking the time to hear us today. For all the reasons set forth in our brief and reply, we would ask that this court find that the trial court views its discretion and grant our request for a reversal and remand for a new trial. Thank you. Okay. Thank you, Ms. Shelley. Thank you both. The case will be taken under advisement and a written decision will be issued.